**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| JAMIE L. DOCHNIAK,<br><br>    Plaintiff/Counter Defendant,<br><br>v.<br><br>DOMINIUM MANAGEMENT<br>SERVICES, INC.,<br><br>    Defendant/Counter Claimant. | Civil No. 06-237 (JRT/FLN)<br><br><br>**MEMORANDUM OPINION AND**<br>**ORDER GRANTING SUMMARY**<br>**JUDGMENT MOTIONS** |

Kathryn M. Engdahl, **METCALF, KASPARI, HOWARD, ENGDAHL & LAZARUS, P.A.**, 333 Parkdale Plaza, 1660 South Highway 100, Minneapolis, MN 55416, for plaintiff.

Malcolm P. Terry, **MESSERLI & KRAMER P.A.**, 1800 Fifth Street Towers, 150 South Fifth Street, Minneapolis, MN 55402, for defendant.

Plaintiff Jamie Dochniak is a former employee of defendant Dominium Management Services, Inc. ("Dominium"). Dochniak alleges hostile work environment and retaliation claims under Title VII and the Minnesota Human Rights Act. Dominium asserts counterclaims of malicious prosecution, abuse of process, and negligence. This matter is before the Court on the parties' motions for summary judgment. For the reasons set forth below, the Court grants Dominium's motion for summary judgment, and further grants Dochniak's motion for summary judgment on Dominium's counterclaims.

**BACKGROUND**

Defendant Dominium is a residential property management company with rental properties in 15 states, including the Oakdale Village Apartments ("Oakdale") in Oakdale, Minnesota. Plaintiff Jamie Dochniak worked at Dominium's Oakdale property as a caretaker and groundskeeper from October 2001 until early 2003, when she was moved into the position of leasing consultant for Oakdale. Dochniak had numerous performance problems as Oakdale leasing consultant, resulting in nine non-disciplinary write-ups between June 2003 and February 2004.

Dominium's Oakdale property generated insufficient leases between October 2003 and February 2004, resulting in Oakdale's placement on Dominium's "problem property" list. As a result of Oakdale's poor performance, Paul Sween, a Dominium owner, directed Jeff Hansen, regional manager for Oakdale, to make a change in the leasing consultant position at Oakdale. Hansen then directed Mike Bowe, on-site manager at Oakdale, to remove Dochniak from the leasing consultant position and reassign her to the groundskeeper position. Bowe met with Dochniak on February 17, 2004 to inform her of the change. Mike Mumaw, an assistant manager at Oakdale, was present as a witness during Bowe's meeting with Dochniak. The Disciplinary Review Form justifying the demotion stated that "[Dochniak]'s closing ratio is unacceptable." (Bowe Aff. ¶24.)

Dochniak alleges that Mike Mumaw began sexually harassing her around the time of her demotion. According to Dochniak, in January 2004 Mumaw told Dochniak that he had helped another female Dominium employee get promoted to the position of leasing agent at a time when he was having sex with that employee. Mumaw also stated that it

was convenient to have a relationship with leasing agents because they could have sex in vacant apartments. In February 2004 several Oakdale staff including Dochniak and Mumaw met for drinks at a bar after work. Mumaw offered to give Dochniak a ride home, and Dochniak accepted. Mumaw said to Dochniak "if you did not have a boyfriend, I would kiss you." (Dochniak Dep. 160-61.)

On February 16, 2004, Mumaw phoned Dochniak at work and told her that she should stay at his house over the weekend, and that "he would start having sex on the kitchen table and finish her off in bed." (Dochniak Dep. 163.) The phone call lasted about 2 minutes. On February 17, 2004, Dochniak complained to Mumaw on the phone about her demotion. Mumaw allegedly told Dochniak that she should find a rich boyfriend. Dochniak stated that she found this comment offensive because it was unresponsive to her complaint about having been demoted. On February 18, 2004, Dochniak and Mumaw had a third telephone conversation. Dochniak again complained about the demotion. Mumaw responded that he had already told Dochniak to find a rich boyfriend, and then asked Dochniak if she was sure she did not want to spend the night at his house. Dochniak responded that she had to get back to work. The phone call lasted about 20 seconds.

According to Dochniak, she perceived Mumaw's comments to imply that she would have job security if she slept with him. Mumaw's step-father was Dominium's chief operating officer until April 2004, and Mumaw was expected to be the next manager at Oakdale. Mumaw never explicitly asked for sex in exchange for job security or a promotion, however, and Mumaw had no authority to hire or fire employees as an

assistant manager. Dochniak also believed that the timing of Mumaw's propositions suggested that her refusals were connected to Dominium's decision to demote her from leasing consultant to groundskeeper. According to Dochniak, she had been told that she was replaced by a woman who had sex with Jeff Hansen, the Oakdale regional manager. However, Dochniak concedes that she has no evidence of any such connection.

On February 19, 2004, Dochniak called Dominium's human resources manager, Heather Conway, to complain about Mumaw's alleged harassment and her demotion. Mumaw was immediately separated from Dochniak and sent to a different Dominium property pending the completion of an investigation. Conway made numerous attempts to contact Dochniak to discuss the complaint. Finally, on April 12, 2004 Conway traveled to Dochniak's work site to conduct an interview with her regarding the incident. Conway also interviewed Bowe, Mumaw, and other employees regarding the incident. As a result of these interviews, Conway determined that Oakdale staff had participated in improper conduct and discussions regarding sex, relationships, and dating. Mumaw was suspended for one day and transferred to Ashwood Ponds, another Dominium property. However, Conway determined that Dochniak's demotion had been proper based on her performance. According to Dochniak, Mumaw appeared at Oakdale several times following his separation and transfer. Dochniak testified that this made her very uncomfortable.

On December 8, 2004, Dochniak filed discrimination and retaliation claims against Dominium with the Equal Employment Opportunity Commission. Dochniak received a "Notice of Right to Sue" letter on October 17, 2005.

Dochniak continued to have performance problems following her demotion, including repeated tardiness. In October 2005, Dochniak slept through a training class that had been paid for by Dominium. Dochniak was suspended for two days as a result. On the night of December 6, 2005, Dochniak slept through multiple pager calls from Oakdale tenants while she was on call for Dominium. The tenants had called to report an emergency water pipe break, which was causing severe flooding in several apartment units. Because Dochniak failed to respond to the pages, water flooded the apartments and caused approximately $20,000 in damage. Dochniak was terminated on December 7, 2005.

Dochniak brought this action against Dominium on January 13, 2006, alleging sexual harassment and retaliation under Title VII and the Minnesota Human Rights Act ("MHRA"). Dominium asserted counterclaims of negligence, malicious prosecution, and abuse of process. Both parties filed motions for summary judgment.

## ANALYSIS

**I.     STANDARD OF REVIEW**

Summary judgment is appropriate in the absence of any genuine issue of material fact and when the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all

reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.    DOMINIUM'S MOTION FOR SUMMARY JUDGMENT

In Counts 1 and 2 of her Complaint, Dochniak alleges that she was subjected to sexual harassment at Dominium in violation of Title VII and the Minnesota Human Rights Act ("MHRA").[1]  *See* 42 U.S.C. § 2000e-2(a); Minn. Stat. § 363A.08, subd. 2. Specifically, Dochniak alleges that Dominium engaged in *quid pro quo* sexual harassment, and that the alleged sexual harassment created a hostile work environment at Dominium.  Counts 3 and 4 of the Complaint allege retaliation and reprisal under Title VII and the MHRA.  *See* 42 U.S.C. § 2000e-3(a); Minn. Stat. § 363A.15.  Dominium moves for summary judgment on each Count.

### A.    *Quid Pro Quo* Sexual Harassment

To prevail on a theory of *quid pro quo* sexual harassment, Dochniak must show that (1) she was a member of a protected class; (2) she was subjected to unwelcome sexual harassment in the form of sexual advances or requests for sexual favors; (3) the harassment was based on sex; and (4) her submission to the unwelcome advances was an express or implied condition for receiving job benefits or her refusal to submit resulted in

---

[1] The analysis of sexual harassment claims under Title VII is analogous to sexual harassment claims under the MHRA.  *See Finley v. Empiregas, Inc. of Potosi*, 975 F.2d 467, 473 (8th Cir. 1992).

a tangible job detriment.  *Cram v. Lamson & Sessions Co.*, 49 F.3d 466, 473 (8th Cir. 1995).

Dochniak points to two events to support her *quid pro quo* harassment claim. First, plaintiff notes that she was demoted from the leasing consultant position one day after she refused Mumaw's sexual advances during their February 16, 2004 phone conversation. Dochniak further notes that after she was demoted, Mumaw suggested that she "should find a rich boyfriend like [his] ex-girlfriend did." (Dochniak Dep. at 149-50.) Second, plaintiff alleges that another Dominium employee was promoted to leasing consultant after the employee had had sex with Dominium manager Jeff Hansen at a Dominium holiday party.

The Court finds that Dochniak has set forth no genuine issue of material fact to support her contention that her refusal to submit to Mumaw's sexual advances resulted in her demotion. The record shows that the decision to demote Dochniak was ultimately made by Dominium owner Paul Sween following Oakdale's placement on Dominium's "problem property" list. Dochniak has pointed to no facts indicating that Mumaw participated in or influenced the decision to demote Dochniak. Rather, the record shows that Mumaw had no hiring or firing authority as an assistant manager for Dominium, and that Dochniak had a well-documented history of performance problems during her tenure as Oakdale's leasing consultant. The mere timing of Dochniak's demotion, one day after refusing Mumaw's sexual advances, is not sufficient by itself to support an inference that her refusal was connected to the demotion. Nor has Dochniak established any evidentiary support for her contention that another Dominium employee was promoted to

leasing consultant after having sex with Hansen.[2]  For these reasons, the Court grants Dominium's motion for summary judgment with respect to Dochniak's *quid pro quo* sexual harassment claim.

### B. Hostile Work Environment

Dochniak's hostile work environment claim must show 1) membership in a protected group, 2) the occurrence of unwelcome harassment, 3) a causal nexus between the harassment and her membership in the protected group, 4) that the harassment affected a term, condition, or privilege of employment, and 5) that the employer knew or should have known of the harassment and failed to take prompt remedial action.[3] *Meriwether v. Caraustar Packaging Co.*, 326 F.3d 990, 993 (8th Cir. 2003). A hostile work environment exists where "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive" to alter the conditions of employment. *Id.* The Court finds that Dochniak's hostile work environment claim fails because she has presented no genuine issue of material fact that the harassment affected a term, condition, or privilege of employment.

Harassment affects a term, condition, or privilege of employment where it is "severe or pervasive enough to create an objectively hostile or abusive work

---

[2] Dochniak relies on an Affidavit submitted by Mike Bowe to support this factual allegation. However, in Bowe's subsequent deposition, he admits that he has no evidence that the employee had ever slept with or had sexual contact with Hansen. (Bowe Dep. at 12-20.)

[3] The final element applies to allegations of non-supervisory harassment, but not to allegations of supervisory harassment. *See Carter v. Chrysler Corp.*, 173 F.3d 693, 700 (8th Cir. 1999).

environment." *Diaz v. Swift-Eckrich, Inc.*, 318 F.3d 796, 800 (8th Cir. 2003). Whether the alleged harassment is sufficiently severe or pervasive is an intensely fact-specific inquiry. *See Barbour v. Browner*, 181 F.3d 1342, 1348 (D.C. Cir. 1999). In assessing Dochniak's harassment claim, the Court considers the frequency of the discriminatory conduct, its severity, whether the conduct is physically threatening or humiliating or merely an offensive utterance, and whether it unreasonably interferes with an employee's work performance. *Carter v. Chrysler Corp.*, 173 F.3d 693, 702 (8th Cir. 1999). The Court finds that Dochniak's factual allegations, accepted as true, are not sufficiently severe or pervasive to constitute harassment affecting a term or condition of employment. The alleged harassment was short-lived and infrequent. The three phone calls between Mumaw and Dochniak took place over the course of three days and were relatively brief. Dochniak stated that she found Mumaw's "rich boyfriend" comment offensive because it was unresponsive to her complaints, not because she perceived it as sexually hostile or humiliating. Further, Mumaw's advances toward Dochniak in the workplace, while offensive and distasteful, were non-threatening in nature. As such, based on Dochniak's allegations, the Court cannot conclude that the Oakdale work environment was permeated with discriminatory intimidation, ridicule, or insult.

Dochniak argues that the accumulated incidents of alleged harassment led her to believe that employment benefits would be granted in exchange for sexual favors, and that such a work environment must be deemed hostile. *See Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 607 (2d Cir. 2006) (stating that "[t]hreats or insinuations that employment benefits will be denied based on sexual favors are, in most circumstances,

quintessential grounds for sexual harassment claims, and their characterization as 'occasional' will not necessarily exempt them from the scope of Title VII"). While such a workplace would likely be deemed a sexually hostile work environment, Dochniak has set forth no genuine issue of material fact in support of her *quid pro quo* harassment theory, as discussed above. For these reasons, the Court concludes that the alleged harassment is not sufficiently severe or pervasive to support Dochniak's hostile work environment claim.

The Court further finds that Dochniak has not established a genuine issue of material fact regarding Dominium's failure to take prompt remedial action.[4] In assessing the reasonableness of an employer's remedial action, courts consider factors such as the amount of time between the notice and the remedial action, the options available to the employer, and whether or not the remedial measures ended the harassment. *Carter*, 173 F.3d at 702. The record shows that Mumaw was separated from Dochniak and the Oakdale facility immediately after Dochniak filed her complaint with Dominium Human Resources, and that the separation and subsequent investigation effectively ended any sexual harassment by Mumaw. Although Dochniak notes that Mumaw returned to the Oakdale facility several times following his separation, she points to no evidence that

---

[4] Because the alleged harassment is not sufficiently severe or pervasive to support a hostile work environment claim, the Court need not determine whether Mumaw was a supervisor. Nonetheless, the Court notes that Dochniak's claim that Mumaw was "a supervisor with immediate (or successively higher) authority over the employee," *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998), has little evidentiary support in the record. Assuming Mumaw was not a supervisor, Dochniak must show that the employer knew or should have known of the harassment and failed to take prompt remedial action. *Meriwether*, 326 F.3d at 993.

Mumaw engaged in harassing behavior during those visits. Further, Dominium promptly launched an investigation into the alleged harassment following Dochniak's complaint.

Although Dominium ultimately took prompt remedial action in response to Dochniak's complaint, the Court is troubled by Dominium's delay in carrying out its investigation of the alleged harassment. Approximately six weeks elapsed between the time of Dochniak's complaint and Conway's interview with Dochniak. While the parties dispute the reason for the delay, it is the responsibility of the employer to ensure that investigations into alleged harassment are conducted in a timely manner. In this instance, Dominium's immediate separation of Mumaw from the Oakdale facility mitigates the effect of Dominium's delay in carrying out its investigation. Nevertheless, the Court notes that a six-week delay in carrying out investigations of alleged harassment may, in certain circumstances, render an employer's remedial action unreasonable.

In sum, however, the Court finds that Dochniak has failed to establish a genuine issue of material fact with respect to her hostile work environment claim. The Court therefore grants Dominium's motion for summary judgment on Dochniak's sexual harassment claims under Title VII and the MHRA.

    **C.**    **Retaliation and Reprisal**

Dochniak next argues that Dominium retaliated against her after she complained about sexual harassment and filed discrimination claims with the EEOC. Federal and state courts evaluate retaliation and reprisal claims under the burden shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). *See Scott v. County of Ramsey*, 180 F.3d 913, 917 (8th Cir. 1999). To make out a prima facie case of retaliation,

a plaintiff must show that she engaged in protected activity, that she suffered an adverse employment action, and that a causal connection exists between her protected activity and the adverse employment action.  *Id.*  If the plaintiff makes this initial showing, a presumption of retaliation arises, and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action.  *Id.*  If the defendant meets this burden, the plaintiff bears the burden of demonstrating that the defendant's stated reason is a pretext for discrimination.  *McDonnell Douglas*, 411 U.S. at 804.

Dominium does not dispute that Dochniak engaged in protected activity by making a sexual harassment complaint and by filing a charge of discrimination with the EEOC.  Nor does Dominium dispute that Dochniak's termination was an adverse employment action.  Instead, Dominium argues that Dochniak has failed to establish a prima facie case of retaliation because no causal connection exists between the protected activity and her subsequent termination.  Dochniak argues that there is indirect evidence of a causal connection.  Specifically, Dochniak points to the temporal proximity between the issuance of the EEOC right to sue letter and her termination.  *See Peterson v. Scott County*, 406 F.3d 515, 524-25 (8th Cir. 2005) (stating that an inference of causation may arise from the timing of events, but that in general more than temporal proximity is required to present a genuine issue on retaliation).  Dochniak further argues that other Dominium employees were not terminated after sleeping through pagers.  *See Scott*, 180 F.3d at 918 (noting that evidence of disparate treatment may support an inference of causal connection between protected activity and the adverse employment action).

Even viewing the facts in a light most favorable to the plaintiff, however, the Court finds that Dochniak has failed to set forth a genuine issue of material fact as to causation. Dochniak first complained about sexual harassment on February 19, 2004, and filed her EEOC charge on December 10, 2004. The Court finds that the amount of time that elapsed between Dochniak's protected activity and her subsequent termination on December 7, 2005 is insufficient in this case to infer a causal connection. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (stating that "cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close'"). Although the EEOC right to sue letter was issued approximately eight weeks prior to Dochniak's termination, the issuance of a right to sue letter by the EEOC is not protected activity under Title VII. *See id.* Further, Dochniak has not identified similarly situated employees who were not terminated for similar conduct. Specifically, Dochniak's failure to respond to multiple page calls resulted in approximately $20,000 damage to Oakdale apartment units. Dochniak has pointed to no evidence that other Dominium employees whose conduct resulted in equally substantial damages were not terminated. For these reasons, the Court concludes that Dochniak has failed to establish a prima facie case of retaliation.

Even if Dochniak succeeded in showing a prima facie case, however, the record is replete with evidence that Dominium had a legitimate, non-discriminatory reason for terminating Dochniak. Dochniak had a long and well-documented history of

performance problems, both as a leasing consultant and as a groundskeeper for Dominium. Dochniak's failure to respond to page calls resulted in significant damage to Oakdale. Dochniak argues once again that the temporal proximity between the EEOC letter and her termination are sufficient to establish evidence that Dominium's proffered reason for termination is pretextual. As discussed above, however, the evidence cited by Dochniak is insufficient to establish a prima facie case, and it similarly fails as evidence of pretext.

In sum, the Court concludes that Dochniak has not set forth a genuine issue of material fact on her retaliation and reprisal claims. The Court therefore grants Dominium's motion for summary judgment on those claims.

### III.  DOCHNIAK'S MOTION FOR SUMMARY JUDGMENT

Dochniak moves for summary judgment on Dominium's counterclaims of negligence, malicious prosecution, and abuse of process. For the reasons stated below, the Court grants Dochniak's motion.

#### A.  Negligence

Dominium argues that Dochniak was negligent in sleeping through multiple pager calls, which caused flooding in three Oakdale apartments and resulted in approximately $20,000 in damages. Under Minnesota Statute § 181.970, an employer must indemnify an employee for civil damages if the employee 1) was acting within the scope of

employment, 2) was not guilty of intentional misconduct, willful neglect, or bad faith, and 3) is not indemnified by another person for the same damages.[5]

Dominium argues that Dochniak's failure to immediately return the pager calls on the morning following the flooding incident demonstrates bad faith or willful neglect. Dochniak contends that she did not return the pager calls on the following morning because she had been informed that Dominium personnel had responded to the problem. The Court finds that Dochniak's failure to return the pager calls is insufficient to establish a genuine issue of material fact that Dochniak acted intentionally or in bad faith. The Court therefore grants Dochniak's motion for summary judgment on Dominium's negligence counterclaim.

### B. Malicious Prosecution and Abuse of Process

To state a claim for malicious prosecution, Dominium must demonstrate that 1) the action was brought without probable cause or reasonable belief that the plaintiff would ultimately prevail on the merits; 2) the action must be instituted and prosecuted with malicious intent; and 3) the action must terminate in favor of the defendant. *Kellar v. Vonhultum*, 568 N.W.2d 186, 192 (Minn. Ct. App. 1997). Similarly, Dominium's abuse of process claim must show 1) an ulterior purpose, and 2) the act of using the

---

[5] Dominium also argues that the appropriate legal standard is found in Minn. Stat. § 302A.521, which requires an employer to indemnify its employee where the employee "acted in good faith" in carrying out her job duties. Under either statutory standard, however, Dominium must indemnify Dochniak for any damages unless it can show that Dochniak acted in bad faith.

process to accomplish a result not within the scope of the proceedings in which it was issued. *Id.*

Dominium points to no evidence supporting its contention that Dochniak acted with malicious intent in bringing this action, or that she had some ulterior purpose other than vindicating her rights under Title VII and the MHRA. The Court therefore grants Dochniak's motion for summary judgment on these claims.

### ORDER

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Dominium's Motion for Summary Judgment [Docket No. 41] is **GRANTED**.

2. Plaintiff Dochniak's Motion for Summary Judgment on Dominium's Counterclaims is [Docket No. 30] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: September 6, 2007　　　　　　　　　　s/ John R. Tunheim
at Minneapolis, Minnesota.　　　　　　　　　　JOHN R. TUNHEIM
　　　　　　　　　　　　　　　　　　　　　United States District Judge